# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE AT NASHVILLE

| | |
|---|---|
| PORTER FAMILY LIMITED PARTNERSHIP, ) <br> ) <br> **Plaintiff,** ) <br> ) <br> vs. ) <br> ) <br> ST BRANDS, INC., ) <br> CROPSHARE AMERICA, INC., ) <br> JASON FRANKOVICH, ) <br> DAVID CONKLING, ) <br> ) <br> ) <br> **Defendants.** ) | CASE # <br><br> JURY DEMAND |

## COMPLAINT

Comes now the Plaintiff, by and through their counsel, Isaac Conner of Manson Johnson Conner PLLC, would respectfully submit to the Court the following Complaint:

### NATURE OF THE ACTION

1. This is an action to recover the remaining balance of a $3,150,000 contract deposit being held by Defendants and/or their agents after falsely and fraudulently inducing Plaintiff to execute a Purchase Order and Corporate Invoice for two million (2,000,000) N95 medical masks ("Contract") which Plaintiff never received.

2. Plaintiff initially contacted Defendants to inquire about their ability to supply significant amounts of N95 medical masks and informed Defendants of Plaintiff's previous supply chain issues due to the pandemic. Defendants made numerous representations assuring Plaintiff that Defendants could supply the needed masks because of their direct relationships with the manufacturers.

3. Based on Defendants assurances, Plaintiff executed the Contract and deposited $3,150,000 with Defendants' for the purchase of two million N95 medical masks in April 2020.

4. Thereafter, Plaintiff discovered Defendants were working with third-party "authorized resellers" and not directly with the manufacturers. Defendants accepted Plaintiff's deposit but were unable to deliver the masks.

5. According to Defendants, they could not honor the Contract due to the Chinese government taking over Defendant's China-based mask manufacturer and setting prices and shipping dates not in conformity to the Contract.

6. Defendant has yet to return the full balance of Plaintiff's contract deposit.

7. Plaintiff thus brings this action to recover its contract deposit, plus incidental damages, punitive damages, treble damages, pre-judgment and post-judgment interest, attorney's fees, and all costs incurred in bringing this action.

## PARTIES

8. Plaintiff, Porter Family Limited Partnership is a Tennessee limited partnership with its principal office located at 1014 Argyle Avenue, Nashville, TN 37203.

9. Defendant, ST Brands, is a Wyoming corporation with its principal office located at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

10. Defendant, Cropshare America, Inc., is a Wyoming corporation with its principal office located at 1309 Coffeen Avenue, Suite 1200, Sheridan, Wyoming 82801.

11. Defendant, Jason Frankovich, is a resident of New York with his principal place of residence located at 7 Navy Pier Ct. Staten Island, New York 10304.

12. Defendant, David Conkling, is a resident of New York with his principal place of residence located at 488A Quincy St. Apt #1 Brooklyn, New York 11221

## JURISDICTION AND VENUE

13. Plaintiff incorporates by reference herein the averments of paragraph 1 – 12, as if set out here in full.

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1332, based on diversity of citizenship between Plaintiff and Defendants, and because the amount in controversy exceeds $75,000. This Court has supplemental jurisdiction over all state law claims under 28 U.S.C. §1367, and under principles of pendant jurisdiction.

15. Venue is proper in this Court pursuant to, inter alia, 28 U.S.C §1391.

## FACTUAL AVERMENTS

16. Plaintiff incorporates by reference herein the averments of paragraph 1 – 15, as if set out here in full.

17. Plaintiff operates a family business charged with managing and investing in assets for the Porter family.

18. Defendant, ST Brands, Inc., is a holding company of branded assets that create, develop, market, and sell unique and proprietary cannabidiol products, according to Defendant's website.

19. Defendant, CropShare America, Inc., is a consultant/advisory company specializing in the hemp industry and partnering with hemp farm operations.

20. Defendant, Jason Frankovich, is the founder of CropShare America, Inc. and chairman of the board of ST Brands, Inc.

21. Defendant, David Conkling, is the SVP, Business Development of CropShare America, Inc., and director of operations for ST Brands, Inc.

22. On or around March 30th, 2020, Plaintiff contacted Defendants to inquire about the purchase of a significant number of N95 masks and whether Defendants were capable of fulfilling the order.

23. Plaintiff informed Defendants of the then-current supply chain issues they were facing in the market due to the onset of the pandemic. Particularly, large N95 mask orders were being denied by most manufacturers.

24. In the initial conversations between Plaintiff and Defendants, Defendants told Plaintiffs they had been selling masks and closing equivalent-sized deals the entire year of 2020 and many in the years prior.

25. Defendants represented that they had previously worked with 3M, HoneyWell, and multiple major hospital groups.

26. Defendants assured Plaintiffs they could fulfill the significant order due to the Defendants' direct relationships with China-based manufacturers. Specifically, Defendants emphasized that they had a special relationship with Dasheng Health Products Manufacturing ("Dasheng").

27. Due to these representations, Plaintiff initially agreed to contract with Defendants for the purchase of fourteen million (14,000,000) N95 masks of which was to be purchased in multiple tranches. **The Corporate Invoice is attached to this Complaint as Exhibit A.**

28. Throughout the negotiations and prior to execution, there were many oral changes to the initial agreement between the Parties. According to Defendants, review and execution of memorialized agreements prior to order was not feasible because of the time-sensitive nature of placing an order due to the manufacturer's active waitlists and the number of orders they were receiving during the onset of the pandemic.

29. On or around April 7th, 2020, Plaintiff and Defendant executed the Amendment to Purchase Order and Corporate Invoice ("Contract") for the purpose of Plaintiff purchasing two million N95 medical masks from Defendant for the purchase price of $6,300,000.00 which required a $3,150,000.00 initial deposit. **The Contract is attached to this Complaint as Exhibit B.**

30. Defendants represented that the process of the deal would begin with (1) Plaintiff making a deposit, then (2) the tranche of masks would be shipped and undergo the SGS certification process, and (3) once certified, the tranche would be released to Plaintiff. Defendants committed to a ten (10) day delivery window.

31. Plaintiff made the deposit on April 9th, 2020, and no order was ever received by Plaintiff thereafter.

32. To prove the order was placed, Defendant showed Plaintiff an ST Brands invoice/order form with names of the supplier and manufacturer redacted. **A copy of this invoice/order form is attached to this Complaint as Exhibit C.**

33. On or around April 28th, 2020, Plaintiff received a copy of the wire confirmation for the deposit and realized the wire was not sent to any of the Defendants, Defendants' agent Venus Health Consulting Ltd, or Dasheng. The wire was sent to Shanghai IVEN Pharmatech Engineering Co.

34. On April 28th, 2020, Plaintiff emailed Defendant Jason Frankovich for an explanation and more information about the recipient of the wire. Defendant Jason Frankovich stated that they were working with third-party "authorized resellers" and not the manufacturer directly. Defendant Jason Frankovich further stated his "colleagues have an issue being optimistically pleasing" but he "tells it like it is". **The email correspondence reflecting**

**this conversation is attached to this Complaint as Exhibit E.**

35. The only reason Plaintiff agreed to contract with Defendants, in the first place, was due to their representation that they had direct relationships with China-based manufacturers.

36. Based on Defendant's pre-Contract representations, Plaintiff believed Defendant worked directly with the manufacturer of the N95 masks, Dasheng. This was not the case.

37. Upon information and belief, Defendant uses third-party "authorized resellers" to purchase Chinese-manufactured medical supplies on behalf of Defendants and its clients. Two of Defendant's third-party authorized resellers are Venus Health Consulting Limited and Shanghai IVEN Pharmatech Engineering Co.

38. On or around April 28th, 2020, Defendants informed Plaintiff that it could not honor the Contract and fulfill Plaintiff's order because the Chinese government allegedly "took over" the Dasheng manufacturing business.

39. In "taking over" Dasheng, Defendants allege that the Chinese government set prices and shipping dates that would not be feasible for the terms of the Contract. Therefore, Defendants could not honor the Contract.

40. Defendants told Plaintiff that the deposit would be returned to Plaintiff, but the full amount of the deposit has yet to be received. Plaintiff is still owed over $600,000 of its own money.

41. After many requests for the return of the remaining amount of deposit by Plaintiff, Defendant Jason Frankovich began ignoring Plaintiff's calls, texts, and emails, and represented that the "Chinese" would not return the Plaintiff's deposit. **The text message correspondence reflecting this is attached as Exhibit F.**

42. On or around June 16th, 2020, Defendant Jason Frankovich told Plaintiff that his lawyer filed suit with "the Chinese who want to settle" and it "will be resolved tonight." Defendant

Jason Frankovich further stated that Hong Kong (British) law is controlling so the law favors them. **The text message correspondence reflecting this conversation is attached to this Complaint as Exhibit G.**

43. Upon information and belief, Plaintiff believes Defendants never secured an order for two million N95 masks with Dasheng.

44. Upon information and belief, Plaintiff believes Dasheng initially denied Defendants' order placed on behalf of Plaintiffs. Defendants did not inform Plaintiff that the order was denied.

45. Upon information and belief, Plaintiff believes Defendants used Plaintiff's deposit to try and complete multiple side deals to fulfill its duties under the Contract.

46. Upon information and belief, Defendants used the remaining outstanding balance of the deposit owed to Plaintiff for its own separate business endeavors not in accordance with the terms of the Contract.

47. Defendants have not returned the remaining balance of the deposit back to Plaintiff and have deprived Plaintiff of the use of those funds for over a year.

48. Due to Defendants conduct, Plaintiff lost the potential profit of $1,720,000.00 for the resale of One Million (1,000,000) masks and deteriorated its relationship with ASP Global because of Plaintiff's assurances to ASP Global based on Defendants' false representations. **The purchase order from ASP Global is attached to this Complaint as Exhibit H.**

49. Due to Defendants conduct, Plaintiff incurred a Fifty-Five Thousand Dollar ($55,000) penalty on its loan which was the source of the monies for the deposit.

# CLAIMS

## Count I: Breach of Contract

50. Plaintiff incorporates by reference herein the averments of paragraph 1 – 49, as if set out here in full.

51. Defendants are in breach of contract because Defendants executed the Contract, accepted the Deposit, but failed to deliver the contracted-for goods: two million N95 masks.

52. The essential elements of any breach of contract claim include: (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract. *Ingram v. Cendant Mobility Fin. Corp.*, 215 S.W.3d 367 (Tenn. Ct. App. 2006).

53. Plaintiff and Defendants clearly executed and entered the Contract on April 7th, 2020. Plaintiff was to provide payment and Defendants were to provide two million N95 masks.

54. Plaintiff made payment as required by the Contract. Defendants did not provide any N95 masks as required by the Contract. No action was taken by Plaintiff to prevent Defendants from providing the N95 masks.

55. Plaintiff has not received the complete refund of the Deposit and has been wrongfully denied use of its own funds from the Deposit for over a year.

56. Defendants are liable to Plaintiff for breach of contract, lost profits, and all incidental damages resulting from its breach.

## Count II: Fraud In The Inducement

57. Plaintiff incorporates by reference herein the averments of paragraph 1 – 56, as if set out here in full.

58. Defendants made false representations to Plaintiff about the extent of their relationships with medical supplies manufacturers in China and their ability to provide significant amounts of N95 masks during the Pandemic to induce Plaintiff into making the Deposit and entering the Contract that the Defendants knew it could not honor.

59. The elements of a claim for fraudulent inducement to contract include: (1) a false statement concerning a fact material to the transaction; (2) knowledge of the statement's falsity or utter disregard for its truth; (3) intent to induce reliance on the statement; (4) reliance under circumstances manifesting a reasonable right to rely on the statement; (5) an injury resulting from the reliance. *Robert J. Denley Co. v. Neal Smith Const. Co.*, 2007 WL 1153121, at *6 (Tenn. Ct. App. Apr. 19, 2007).

60. During the Pandemic, a time where N95 masks were highly sought after, Defendants made multiple false assertions to Plaintiff about the extent of its relationships with Chinese-based medical supplies manufacturers, including Defendants having a direct relationship with the manufacturer, Dasheng, and Defendants' ability to supply two million N95 masks.

61. Defendants represented that it had completed deals with 3M, HoneyWell, and multiple major hospital groups.

62. Defendants represented that it had closed multiple deals in the year 2020 and many deals in the years prior. Defendants assured Plaintiff that it had the capability to close a deal for fourteen million masks.

63. After execution of the Contract and payment of the deposit, Defendants admittedly stated that its relationships were with third-party "authorized resellers" of Chinese-based medical supplies manufacturers, not directly with the manufacturers.

64. Defendant purposefully exaggerated the extent of its relationships with the Chinese-based manufacturers to cause Plaintiff to believe it had the ability to provide the amount of N95 masks contemplated in the Contract.

65. The only reason Plaintiff entered the Contract was because of Defendants' alleged direct relationships with the China-based manufacturers.

66. During the Pandemic, large amounts of N95 masks from a variety of companies were being imported and produced to satisfy the high demand due to COVID-19. Plaintiff relied on the exaggerated statements by Defendant and believed that Defendant could provide the significant number of masks set out in the Contract.

67. In relying on Defendant's statements, Plaintiff executed the Contract and paid the Deposit. Shortly after, Defendant admitted to not being able to produce any N95 masks and has not returned the full amount of the deposit to Plaintiff.

68. Plaintiff has been denied the availability and use of over $600,000 of the deposit for over a year, which caused Plaintiff to be in default on its loan which is the source of the funds for the Deposit).

69. Defendants are liable to Plaintiff for fraud in the inducement, all damages resulting from its fraudulent representations, and punitive and/or treble damages.

## Count III: Conversion

70. Plaintiff incorporates by reference herein the averments of paragraph 1 – 69, as if set out here in full.

71. Defendants have improperly withheld and not returned the remaining balance of Plaintiff's deposit after Defendants, their self, admitted to not being able to honor the Contract less than a month after the deposit was received.

72. Conversion is the appropriation of tangible property to a party's own use in exclusion or defiance of the owner's rights. Conversion is an intentional tort, and a party seeking to make out a prima facie case of conversion must prove: (1) the appropriation of another's property to one's own use and benefit, (2) by the intentional exercise of dominion over it, (3) in defiance of the true owner's rights. *Pomeroy v. McGinnis*, 2021 WL 3017199, at *5 (Tenn. Ct. App. July 16, 2021).

73. Defendants and their' agents did not fulfill its duties under the Contract and have retained the remaining balance of the deposit for no just reason.

74. Plaintiff made the deposit in one (1) wire transaction. Defendants have returned only a portion of the deposit in multiple wire transactions over the course of over a year.

75. Upon information and belief, Defendants used the funds from the deposit to undergo multiple side deals to satisfy the Contract in avenues not in accordance with the terms of the Contract.

76. Defendants' have intentionally retained the deposit for its own benefit and use for over a year while denying Plaintiff the availability and use of Plaintiff's own funds.

77. Defendants are liable to Plaintiff for conversion and all damages resulting from its conversion, including interest and costs of default on Plaintiff's loan.

### Count IV: Unjust Enrichment

78. Plaintiff incorporates by reference herein the averments of paragraph 1 – 77, as if set out here in full.

79. Defendant received the Deposit and has improperly retained the remaining balance of the Deposit for its own use after failing to deliver two million N95 masks to Plaintiff.

80. The elements of an unjust enrichment claim are: 1) "[a] benefit conferred upon the defendant by the plaintiff"; 2) "appreciation by the defendant of such benefit"; and 3) "acceptance of such benefit under such circumstances that it would be inequitable for him to retain the benefit without payment of the value thereof. *Advanced Sec. Servs. Evaluation & Training, LLC v. OHR Partners Ltd.*, 2018 WL 1391626, at *11 (Tenn. Ct. App. Mar. 20, 2018).

81. Defendants received the deposit from Plaintiff pursuant to the Contract. Defendants never delivered any N95 masks as required by the Contract.

82. Defendants have retained $600,000 of the deposit for over a year and denied the Plaintiff the availability and benefit of the use of its own money.

83. Defendants have retained the availability and use of the deposit for itself without performing any of its duties under the Contract.

84. Defendants are liable to Plaintiff for unjust enrichment and all damages resulting from, including the value of the availability of the funds improperly retained by Defendant, lost profits, and opportunity costs.

### PRAYERS FOR RELIEF

**Premises considered**; Plaintiff prays:

a. Process issue and be served upon the Defendants requiring that they appear and answer this complaint as required by law;

b. That a jury of twelve (12) persons try the cause;

c.  That this Court find the Defendants breached the Contract in violation of Federal and Tennessee law;

d.  That this Court award a judgment of compensatory damages in favor of the Plaintiff against the Defendants for their negligent conduct in the amount of Six Hundred Thousand Dollars ($600,000.00) or an amount the jury deems fair;

e.  That this Court award a judgment of lost profit in favor of Plaintiff against the Defendants for their conduct in the amount of Three Million Five Hundred Thousand Dollars ($3,500,000.00) or an amount the jury deems fair;

f.  That this Court award a judgment of punitive damages in favor of Plaintiff against the Defendants for their conduct in the amount of One Million Dollars (1,000,000);

g.  That this Court award a judgment of treble damages in favor of Plaintiff against the Defendants for their conduct in the amount the jury deems fair;

h.  That Plaintiff be granted judgment for reasonable attorney's fees, accrued pre-judgment interest at ten percent (10%), post-judgment interest (if applicable), court costs and expenses, discretionary costs and expenses, any and all other costs and expenses recoverable by law; and

i.  That the Plaintiff have such other and further relief as to which they may be entitled.

Respectfully Submitted,

**MANSON JOHNSON CONNER PLLC**

_____
Isaac Conner, BPR #22736
1720 West End Avenue
Suite 300
Nashville, TN 37203
(615) 254-1600